UNITED STATES v. GOMEZ.

1. Though the general rule in cases of appeal undoubtedly is that the transcript of the record must be filed and the case docketed at the term next succeeding the appeal, yet the rule necessarily has exceptions; and where the appellant, without fault on his part, is prevented from seasonably obtaining the transcript by the fraud of the other party, or by the ill-founded order of the court below, or by the contumacy of its clerk, the rule will not apply.

2. Mandamus is the proper remedy, generally speaking, where the petition for appeal is improperly denied, and it is an appropriate remedy to compel the clerk, in case of refusal, to prepare and deliver the transcript; but where it is doubtful whether the remedy would be effectual—as where the proceedings had been such that the question as to pendency of the appeal itself, could not well be determined without an inspection of the record—a resort to it is not obligatory. In such cases

---

* See *supra*, p. 748.

if the suit be an appeal in a land case from the California district, in which the United States is a party, it may apply to the district attorney for a transcript; the latter as well as the clerk having power under an act of Congress of March 3, 1861, in such cases of appeal, to transcribe and certify the record to this court.

8. In proceedings under the act of March 3, 1851, for the settlement of private land claims in California, where the claimant produces neither a concession nor a grant, and does not prove that he ever had possession of the land described in his petition, the claim is rightly disallowed.

4. Where a decree was obtained by fraud, still if in form correct, it is sufficient as against the appellee to sustain the appeal, correct the error, and dispose of the case.

THIS was an appeal, by the United States, from a decree of the District Court for Southern California, under the act of March 3, 1851, to settle private land claims in California, reversing a decision of the Board of Land Commissioners, and confirming to one Vincente Gomez a claim for a tract or *rancho* called the *Panoche Grande.*

So far as the title involved in the claim of Gomez was concerned, the case could embrace nothing, of course, but the question, whether title was shown or not; whether the claim was well founded, or the reverse of it?

*As respected this matter of the claim.* The petition of the claimant to the governor was for a place described as Panoche Grande, of the extent of *three* square leagues. Appended to it was the customary *infórme;* but there was no concession or grant, nor sufficient evidence of the issue of a title. It was asserted, but not proved, that the claimant had obtained the map in the record from the proper officer. One witness only, of several examined, alleged that he had ever seen the grant, and no possession was shown. A neighbor of Gomez, who had lived for twenty years in the vicinity of the land claimed, and had known Gomez and his father before him, had never heard, as it appeared afterwards, of · Gomez having any land thereabouts. The commissioners rejected the claim. Whether the District Court, on appeal, if it had examined the case and been acting advisedly, would have done the same, can only be inferred. It did not, however, examine the case, nor act advisedly. The person who·

had been the counsel of Gomez, one Ord, having become the representative at law of the United States as the district attorney for that part of California, entered into a bargain with Gomez to allow a reversal, by the District Court, of the decree of the board, and a consequent confirmation of the claim, on condition of receiving himself a portion of the land; which afterwards he did receive. By such an abuse and betrayal of his official trust, as the reporter understood the case, the decree above mentioned was obtained. So far as Gomez was concerned, therefore, whatever title he had derived no validity from the decree.

The allegation was, however, that the land was now owned by McGarrahan, who purchased it in December, 1857, after a decree of confirmation was pronounced by the court, who having had no suspicion that there was anything fraudulent in the judicial proceedings by which the title was confirmed, was not affected by Ord's fraudulent act, and who stood in the position of an innocent purchaser, without notice.

Representing this person, and desiring to get the case *dismissed* from the court, as the first step in establishing his title, *Messrs. Cushing and Stone, in his behalf,* set up that this court had no jurisdiction of the case. Urging, with what force they could on the evidence, McGarrahan's title as a *bonâ fide* purchaser for value of a title regular on its face, they set up further, pressing it strongly, that the court had no jurisdiction to entertain the appeal.

1st. Because the appeal was not taken within five years from the date of the decree.

2d. Because there was no citation.

3d. Because the appeal was not entered at the term of this court next succeeding the appeal.

4th. Because the pretended appeal, by virtue of which this entry was made, lost all its legal effect, by reason of the subsequent proceedings, in the District Court, on the part of the United States District Attorney.

5th. Because the decree appealed from was not a final decree.

To understand these grounds, a narrative must be borne

with by the reader. Its particulars are complicated and dull, perhaps, as well. The history has been once told in the reports of two years since.* But not to refer the reader for half the case to a volume which he may not have at hand, the reporter must request him to tolerate a repetition, and read it again.

The case was heard in the District Court of Southern California, *June* 5, 1857; on which day the court delivered its "opinion," confirming the claim for *three* leagues; and ordering "a *decree*" to be entered up in conformity with the *opinion.* But no decree *was* entered at that time. Was it that a thing begun in fraud found its author infirm of purpose, and was followed by irregularity? The cause did not appear. On the 7th January, 1858, a decree *in extenso* was filed, describing the land confirmed as "three" leagues. The decree ended thus:

"And it appearing that, on the 5*th June,* 1857, the lands had been confirmed by the court to the said claimant, and it having been omitted to sign and enter *a decree therefor, at the date last aforesaid, it is ordered that the same be done now for then.*"

On the 4*th of February* of the same year, the court ordered that the claimant "have leave to amend this decree by substituting *another* in its stead." Gomez did accordingly, on the day following, procure another decree to be entered. It was much like the other, giving the name of the tract and boundaries, as it did; describing it, however, as containing *four* leagues. This decree ended thus:

"It appearing that, heretofore, to wit, on the 5th June, 1857, &c., the claim in this case had been confirmed by the court, but that it had been omitted by the court to sign the decree of confirmation at the time the same was made. It is, therefore, further ordered by the court that the same be signed *now as then.*"

In due time, the sin of the district attorney found him out. He withdrew from the country. And on motion of

---

* United States *v* Gomez, 1 Wallace, 690.

the United States it was, on the 21st March, 1861, ordered by the court (Ogier, J., sitting),

" That all proceedings heretofore had in the cause be set aside, and the cause be put on the calendar, and set for trial *de novo*, according to law."

But, behold a new incident! Mr. Justice Ogier died. Another judge sat in his seat, and *he*, thinking that, after the lapse of a year, no power had rested with his deceased brother to alter or modify a decree, except to correct some clerical error, " with great reluctance," on the 4th August, 1862, vacated the order of March 21, made by his predecessor.

*The case thus stood a decree entered on the 7th of January,* 1858 (or possibly on the 5th of February following), *as of the 5th of June,* 1857.

*At the same term,* on the 25th August, 1862, *on motion in open court—no citation* having been issued—an appeal was allowed the United States " from the decision and *decree of this court confirming the claim of the claimant herein:*" and on the 6th October following, the district attorney, reciting that the claimant was " desirous of moving the court to set aside the order for appeal," agreed by entry made on the minutes that all proceedings should be stayed till the next term, " so as to give the claimant an opportunity to make such motion." On 1st December, 1862, a motion to vacate the appeal was made and heard, and on the 4th the order for appeal was vacated; the grounds of the order being that the decree having been entered *nunc pro tunc*, took effect as from June 5th, 1857; and not from 7th January, 1858; thus, of course, making more than five years to the 25th August, 1862, when the appeal was allowed.

And now came an episode; one of a sort rather unusual in judicial doings. The clerk of the District Court refused to give a copy of the record. The appellants, represented by Mr. Goold, of the California bar, " special counsel of the United States," *had asked* for a copy on the 10th October, after the appeal was allowed, and the clerk had promised to

give it to him.  Not getting it at the promised time, he asked for it again on the 2d of December; the clerk now informed the counsel " that he had *changed his mind on the subject*, and would not prepare or deliver a transcript in. said cause." Mr. Goold " offered to pay said clerk his customary fees for a transcript of said record; but said clerk persisted in his refusal to prepare one."

In anticipation, it would seem, of what was about to happen, the Congress of the United States had intervened, and on the 6th of August, 1861, passed a statute enacting :*

" That the district attorney of the United States of any district in California may transcribe and certify to the Supreme Court of the United States the records of the District Court of his proper district in all land cases wherein the United States is a party, upon which appeals have been or may be taken to the Supreme Court of the United States; and records so certified by such district attorney under his hand and filed in the Supreme Court of the United States shall be taken as true and valid transcripts to the same intent and purpose as if certified by the clerk of the proper district."

McGarrahan in turn applied, 6th April, 1863, to the District Court (Haight, J.) for an injunction on the clerk and attorney to restrain them from making out any transcript; the ground of the application being that the copy asked for was for the purpose of an appeal, and that no appeal was pending.   The court refused an injunction as not a proper remedy, but—observing that no appeal was pending, or from the lapse of time ever could be taken, and that the district attorney had no power to certify copies under the act of Congress except there was one, and that his certificate would be null, accordingly—declared that procuring copies on behalf of the United States in such a case was a fraud on the government, and not to be tolerated, and that " in this case as in most litigations which had come under his observation, private parties were seeking their own ends and

---

* 12 Stat. at Large, 320.

conducting litigations at the expense of the United States, wherein the final result was matter of entire indifference so far as the interest of the government was concerned."

The attorney-general, Mr. Bates, in person now interposed. He wrote to the judge, and by letter sent to Mr. Goold, at San Francisco, directed him to obtain a copy, calling on the district attorney of the United States at San Francisco for any needed " aid." Provision was again made for the clerk's fees. Telegrams were sent across the continent. But it was in vain. Neither request, entreaty, demand, nor offered fees besides, procured the record.

The district attorney accordingly set to work to prepare and certify a roll himself. But the custody of rolls was not with him. They were in the power of the clerk, as had been his own sign manual and official seal. The district attorney could control the one no more than he could control the others. He happened, however, to possess copies of all the parts of the record except the transcript sent up by the late Board of Land Commissioners. Putting all in proper sequence, he prepared a transcript of a record, certifying " that the foregoing one hundred and seven pages are a full, true, and correct copy of *all* the proceedings, entries, and files in the District Court for the Southern District of California, *except* the transcript from the late board, &c., in the case of United States *v.* Gomez, No. 393, for the claim called *Panoche Grande.*"

On this record the case came here, and was docketed in February, 1864.

Soon after it came the then counsel of Gomez, or of his successor in interest, made a *motion to dismiss the case.* The ground of the motion was that the court had no jurisdiction to hear and determine the same—

1. Because the five years within which an appeal can be taken had expired before the appeal was claimed and allowed.

2. Because the entry of the appeal was made without authority and had been set aside.

3. Because there was no citation.

4. Because the appeal was not seasonably prosecuted.

5. Because the transcript of the record was incomplete.

Comparing the reasons now assigned (see *supra*, p. 754) by *Messrs. Cutting & Stone,* on the regular calling of the case, for *refusing to hear,* with those just mentioned as assigned two years ago, by other counsel, in advance of regular call, on a *motion to dismiss,* the reader will perceive that they are in effect, except in the fifth one, the same reasons.   And if the court on the mere motion to dismiss had deemed it best to take up and consider all the five reasons on that motion assigned, and fully and finally to dispose of each one—the fact that they had refused to dismiss the case would have been, of course, a bar to a further presentation of any of those same reasons now : as a cause for declining to hear it. But they did not deem this best.   They considered the 1st, 3d, and 5th of the reasons, in the order in which they stand just preceding.   Considering *them,* they declared them not well founded : holding—

1st. That the decree dated from 7th January, 1858, and not from the prior date of June 5th, 1857.

3d. That a citation was unnecessary.

5th. That the transcript certified by the district attorney was sufficient.

But on the 2d and 4th reasons assigned they said nothing : and remarked in conclusion as follows :

" In view of the *whole* case our conclusion is that the motion to dismiss the appeal must be overruled.   Effect of the motion if granted would be *to leave the decree below in full force and unreversed; which is a result that at present we are not prepared to sanction.   When the cause comes up upon its merits* we shall desire to hear the counsel on the question whether there is any *valid decree* in the case, and if not as to what will be the proper directions to be given in the cause.   Those questions are not involved in the motion to dismiss."

The case had now " come up upon its merits;" when, interpreting the old case " as really nothing more than a declaration that the court were not then prepared to pass finally

upon the rights of the parties," the counsel for the appellee put forward all the old points again. Those already distinctly passed upon, the court did not, however, consider open. The second one it considered as disposed of by what was said about the first. And, disincumbered of a quantity of irrelative matter, by which they were surrounded and confused, the questions *now* before the court were:

1. Whether under the circumstances of this case the appeal, if a final decree, and legally taken and allowed, had been ineffective for want of seasonable prosecution; the general rule being confessedly that the transcript must be filed here and the case docketed at the term next succeeding the appeal?

2. If the appeal had not become ineffective, how did the claim stand upon merits?

3. Whether, if the decree was invalid and void, it had such vitality as that this court would sustain an appeal upon it, and reform and correct it.

*Messrs. Black and Goold, for the United States.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Claim of the appellee, as described in his petition to the land commissioners, was for a tract of land situated in California called *Panoche Grande*, of the extent of four square leagues, and he alleged that the tract was granted to him, in the year 1844, by Governor Manuel Micheltorena. Unable to exhibit his title-papers, as required by the act of Congress upon the subject, he relied upon parol proof to show their existence, loss, and contents. Commissioners rejected the claim, and the claimant appealed to the District Court, where the claim for the whole tract was confirmed. Final decree, as amended, was entered on the fifth day of February, 1858; and on the twenty-fifth day of August, 1862, the appeal of the United States was allowed.

1. Appellants insist that the claim is utterly without merit, and that the decree of the District Court should be reversed. On the other hand, the claimant denies that this court has

jurisdiction of the cause, and contends that the appeal should be dismissed. Principal difficulty in the case grows out of certain proceedings in the cause, which have taken place since it first made its appearance in this court. Docket entries for the December Term, 1858, show that the case was first presented here at that term by the claimant, as an appeal not prosecuted, and that it was, on the production of the record, on his motion, dismissed in conformity to the rules of court for the want of prosecution. Mandate of the court dismissing the appeal was, on the eighteenth day of March following, delivered to the assignee of the claimant.

2. Nothing further was done in the cause in this court until the December Term, 1859, when the attorney-general filed a motion to rescind the decree dismissing the cause, and to revoke the mandate, basing the motion upon the ground that the decree and mandate had both been procured by misrepresentation and fraud. Minutes of the clerk, also, show that he filed his motion on the twenty-seventh day of January, 1860, and that the claimant, on the second day of March following, filed three other motions. First motion of the claimant was for mandamus to the District Court, to compel the judge to file the mandate and permit the execution of the decree confirming the claim. Second motion was for mandamus to compel the District Court to dismiss an application before it to open the decree and grant a rehearing. Third motion was for mandamus to compel the surveyor-general to survey the land confirmed by the decree. All those motions were heard at the same time, and the court overruled the several motions of the claimant, and entered a decree rescinding the decree dismissing the appeal, and revoked and cancelled the mandate as moved by the attorney-general.* Affidavits offered showed that no appeal had been taken by the United States, and that the statement that such an order had been made as was exhibited in the transcript and filed in the case was false. They showed not only that the United States had not appealed, but that a

---

* United States *v.* Gomez, 23 Howard, 326.

motion filed by their special counsel for a rehearing was still pending in the District Court. Decision of the court, there-fore, was, that the appeal was not before the court when the cause was docketed and dismissed.

3. Next appearance of the cause here was at the Decem-ber Term, 1863, which is the appeal now before the court. Record was filed and the cause docketed on the twenty-ninth day of February, 1864; and on the thirty-first day of March following the claimant filed a motion to dismiss the appeal, because, as therein alleged, this court had no jurisdiction "to hear and determine the same." 1. Because the five years within which an appeal can be taken, had expired before the appeal was claimed and allowed. 2. Because the entry of the appeal was made without authority, and had been set aside. 3. Because there was no citation. 4. Be-cause the appeal was not seasonably prosecuted. 5. Be-cause the transcript of the record was incomplete. Parties were heard upon that motion, and on the eighteenth day of April, of the same year, it was unanimously overruled.*

4. Coming to the present term of the court, the docket entries show that the motion under consideration was filed by the claimant on the ninth day of February last. He moved the court to strike out certain matters printed in the record, and requested the court to determine the fourth cause assigned in the motion of the preceding term for the dismissal of the cause, which, as he alleges, was not noticed, considered, or decided, when the motion was overruled and denied. Both branches of the motion were subsequently argued by counsel, and on the twenty-sixth day of February last the motion was overruled; but the Chief Justice, in an-nouncing the result, remarked that the question of jurisdic-tion would be open when the cause should be argued upon the merits.

Since that time, the cause has been reached in the regular call of the docket, and has been fully argued on both sides. Claimant still denies the jurisdiction of the court, and the

---

* United States *v.* Gomez, 1 Wallace, 698.

counsel have reargued all the questions of jurisdiction presented for decision in the original motion to dismiss.

5. Three of those questions, to wit, the first, third, and fifth, were carefully examined and decided by this court during the same term in which the motion was filed, and it is only necessary to refer to that decision as the final determination of the court.* Special mention was not made of the second question presented in the motion, because what was said by the court, in disposing of the first question, rendered any further remarks upon that subject unnecessary. Express statement of the opinion is, that the appeal to this court was allowed on the day therein specified. But the suggestion is, that the court did not decide the fourth question presented for decision, and the suggestion, so far as it applies to the opinion of the court, is certainly well founded.

Fourth objection to the jurisdiction of the court was, that the appeal, even if legally taken and allowed, became null and void for the want of seasonable prosecution. General rule, as established by repeated decisions, undoubtedly is, that the transcript must be filed here, and the case docketed at the term next succeeding the appeal, in order to give this court jurisdiction.† Argument upon that subject is unnecessary, as the rule has been reaffirmed at this term in an opinion delivered by the Chief Justice.‡ Unless the case, therefore, falls within some exception to the general rule of practice, as derived from the act of Congress allowing appeals, the motion of the claimant must prevail.

6. Certain exceptions to that general rule are recognized and allowed, which are as well established as the rule itself. They are admitted as indispensable limitations to guard against fraud and circumvention, and to prevent a failure of justice. Where the appellant, having seasonably procured the allowance of the appeal, is prevented from obtaining the transcript by the fraud of the other party, or by the order

---

* United States v. Gomez, 1 Wallace, 698.

† Steamer Virginia v. West, 19 Howard, 182.

‡ Castro v. United States, *supra*, 46.

of the court, or by the contumacy of the clerk, the rule does not apply, provided it appears that the appellant was guilty of no laches, or want of diligence, in his efforts to prosecute the appeal.* Order allowing the appeal in this case was entered on the twenty-fifth day of August, 1862; but on the sixth day of October following, a stipulation was entered in the minutes, that the transcript should be withheld until the next term of that court, in order to give the claimant an opportunity to move the court to set aside the order of appeal. Such a motion was accordingly made by the claimant on the first day of the succeeding December; and on the fourth day of the same month the court directed that the order allowing the appeal should be vacated and set aside. Reason for vacating the appeal as assigned was, that the five years had expired before it was allowed, which is directly contrary to the decision of this court, and consequently must be considered as overruled.† Although the decision of the court was erroneous, still the proceedings under the motion had the effect to prevent the appellants, in the meantime, from obtaining a copy of the transcript.

Session of this court for that term commenced four days before the order of the District Court was announced, vacating the appeal. Suppose the explanatory facts stopped here, it might well be assumed that it was the conduct of the claimant and the action of the court which prevented the appellants from seasonably perfecting the appeal; but they do not, by any means, stop at that point. Appellants demanded the transcript on the tenth day of October next after the appeal was allowed, and the clerk agreed that it should be prepared and delivered. Failing to obtain it, they, on the second day of December following, again demanded it, and then, for the first time, were informed by the clerk, that he would not furnish the document. Present claimant, on the sixth day of April, 1863, instituted a proceeding in the District Court, to enjoin the clerk and district

---

* United States *v.* Booth, 21 Howard, 512.
† United States *v.* Gomez, 1 Wallace, 699.

attorney from making out and certifying the transcript of the record, upon the ground that the order allowing the appeal was entered without authority of law, and that the appeal had been properly revoked and set aside. Result was, that the judge refused to grant the injunction; but he reiterated his opinion that no appeal was pending, and remarked that the procuring copies for the United States, in such a case, was a fraud upon the government and was not to be tolerated.

Six times the demand was made of the clerk for the transcript, and the request, as often as it was made, was refused. Such demand was made by the special counsel of the United States, and by the district attorney, and by the authority and direction of the attorney-general. Throughout, the clerk refused to furnish the transcript; but finally consented to furnish the attorney-general a copy of each paper in the case; and those separate papers, it is understood, were appended together and duly certified by the district attorney, as appears in the record.[*]

7. Assuming the facts to be as stated, it is obvious that the case falls within the exception to the general rule, as recognized and established in the case of *United States* v. *Booth,* to which reference has already been made. Writ of error in that case was returnable at the December Term, 1855, and it was accompanied by a citation requiring the defendant to appear on the first day of that term. No return, however, was made at that time, and on the first day of February following, the attorney-general filed affidavits, showing that the writ of error and citation had been duly served, and that the State court had directed the clerk to make no return. Whereupon this court passed an order commanding the clerk of the State court to make the required return, and the cause was continued; but none such was ever made. Unable to procure any such return, the attorney-general was allowed, on the 27th day of February, 1857, to file the copy of the record produced when the ap-

---

[*] 12 Stat. at Large, 320.

plication was made for the writ of error, and on the sixth day of March following, the court ordered that it should have the same effect as if it had been regularly filed by the clerk. Evidently the power to retain jurisdiction in the case before the court is even better supported than it was in that case, because the transcript in this case is duly certified under a new provision in a subsequent act of Congress.*

8. Mandamus unquestionably is the proper remedy where the appeal is refused, and it is an appropriate remedy to compel the production of the transcript. Strong doubts are entertained, however, whether it would have been an adequate remedy in this case, because it is more than probable that, if the motion had been made, the affidavits showing the refusal of the clerk to furnish a copy, would have been met by counter affidavits, showing that the appeal had been vacated; and in that state of the case it would have been difficult for the court to have decided what was right and proper between the parties, without the opportunity of inspecting the record.

Grant, however, that the appellants might have had an adequate remedy in a motion to this court for a mandamus, still it is clear that they had a right, under the circumstances of this case, to invoke the benefit of the special provision in the act of Congress referred to as a cumulative means of securing their rights. Application was accordingly made to the district attorney, and he, without delay, made the certificate exhibited in the record. Conclusion therefore is, that the case, in either point of view, is regularly before the court, and all the motions to dismiss are overruled.

9. Regarding the case as regularly before the court, it becomes necessary to examine the merits of the claim. Some suspicion attaches to the claim, because it is made for four leagues of land, whereas the only document introduced in support of it, which is of the least probative force, represents the original claimant as having asked for but three leagues. Document referred to purports to be the petition of the

---

* 12 Stat. at Large, 320.

claimant to the governor, and there is appended to it the usual *infórme;* but there is no concession or grant, nor is there any satisfactory evidence that any title of any kind was ever issued by the governor to the claimant. He states in his petition to the land commissioners, that he obtained the map in the record from the proper officers of the department; but the alleged fact is not satisfactorily proved. Four witnesses were examined by the claimant before the land commissioners, but only one of the number pretended that he had ever seen the grant, and his statements are quite too indefinite to be received as satisfactory proof.

Instead of proving possession under the grant, it is satisfactorily shown that he never occupied it at all; and it is doubtful if he ever saw the premises during the Mexican rule. Land commissioners rejected the claim, but before it came up for hearing in the District Court, his attorney had been appointed district attorney of the United States; and the proofs show that he conveyed two leagues of the land to the district attorney. Circumstances of the confirmation of the claim in the District Court are fully stated in the opinion of this court given when the mandate was revoked and re-called.* Comment upon those circumstances is unnecessary, except to say that the confirmation was fraudulently obtained.

Although the decree was fraudulently obtained, still, inasmuch as it is correct in form, it is sufficient to sustain the appeal for the purpose of correcting the error. Party who procured it cannot be allowed to object to its validity as a means of perpetuating the fraud, especially as he did not appeal from the decree.

The decree of the District Court is therefore reversed, and the cause remanded, with directions to

DISMISS THE PETITION.

---

* United States v. Gomez, 23 Howard, 339.